**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JOHN MICHAEL MILLER, JR.,

    Plaintiff,

    v.

SHERIFF JEFFREY GHALER, et al.,

    Defendants.

Civil Action No.:  PX-25-1234

**MEMORANDUM OPINION**

Pending is a Motion to Dismiss the Complaint filed by Defendants Jeffrey R. Gahler, Daniel Galbraith, Major Gividen, Lieutenant Howell, Captain Chester, Lieutenant Rosette, G. Regulski, and Captain Rumsey.  ECF No. 10.  Also pending is Plaintiff John Michael Miller ("Miller")'s Motion for Appointment of Pro Bono Counsel.  ECF No. 13.  No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).  For the reasons that follow, Defendants' motion shall be denied and Miller's motion shall be denied without prejudice.  Miller shall have 28 days from today to file an amended complaint.

**I.    Background**

The Court construes the Complaint facts as true and most favorably to Miller as the nonmovant.  Miller was detained pending trial at the Harford County Detention Center ("HCDC"), in the fall of 2024, when he needed access to voluminous pretrial discovery to prepare an adequate defense to several criminal cases.  ECF No. 1 at 2-3.  Miller asked Warden Galbraith, Lieutenant Howell, and Officer Regulski on September 11, 2024, for laptop access, and made the same request of Captain Rumsey on January 23, 2025,[1] "to no avail."  *Id.* at 2.  Miller brought Defendants'

---

[1] The Complaint states that this request was sent on January 23, 2024.  This appears to be a typographical error.

denial to the presiding trial judge, Judge Elizabeth Bowen, (Case No. C-12-FM-24-811052).  ECF No. 1 at 3.  Judge Bowen asked Warden Galbraith about the decision to deny Miller access to a laptop for discovery review, to which Galbraith responded that "his policies did not allow [Miller] to retrieve or review [his] evidence."  *Id.*  Judge Bowen, in turn, ordered Defendants to transport Miller to the courthouse over four days so that Miller could review the evidence with the help of computer technician.  *Id.*  Major Gividen, however, cut short Miller's review time without explanation.  *Id.*  Miller next reported this to the Judge who granted a continuance so Miller could complete discovery review, but Warden Galbraith did not facilitate Miller's transport to the courthouse again.  *Id.*

Miller has multiple criminal cases pending in Circuit Court[2] for which he contends Defendants' denial of laptop access to review voluminous discovery has thwarted his ability to adequately prepare for trial.  ECF No. 1 at 3-4.  This lack of preparation, says Miller, is the reason that he was convicted in two such cases (Nos. D-09-CR-24-003130 and D-09-CR-24-003442).  *Id.* at 4.  That same denial of access, Miller argues, has stymied his ability to appeal the convictions as well, in part because HCDC also does not afford access to a law library or legal materials.  *Id.*  Miller seeks compensatory and punitive damages and injunctive relief.  *Id.* at 5.

## II.    Standard of Review

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the well-pleaded allegations as true and most favorably to the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *E.E.O.C. v.*

---

[2] Specifically, Miller identifies the following case numbers: C-12-CR-2400-1075, C-12-CR-2400-1076, C-12-CR-2400-1077, C-12-CR-2400-1078, C-12-CR-2400-1079, C-12-CR-2400-1081, and C-12-CR-2400-1220.  ECF No. 1 at 4.

*Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

## III.     Discussion

Defendants do not dispute that they denied Miller access to the very electronic devices that he needed to review massive quantities of video footage and other relevant evidence. ECF No. 10. Rather, they singularly contend that dismissal is warranted because such restricted access has a "valid penological purpose" related to "security concerns," and because Miller had an alternative "robust" means of access to the discovery. *Id.* at 3-4.

Under the First Amendment, Miller retains a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). This "fundamental constitutional right

of access . . . requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. Protection of the same right includes giving inmates necessary tools to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

Balanced against this right, however, must be the prison official's need to operate a safe and well-run facility. Accordingly, "prison regulations impinging on inmates' constitutional rights" may nonetheless stand if "reasonably related to legitimate penological interests.'" *Lewis*, 518 U.S. at 361 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Court must refrain from inserting itself into the "'difficult judgments concerning institutional operations.'" *Turner*, 482 U.S. at 89 (quoting *Jones v. N. Carolina Prisoners' Union*, 433 U.S. 119, 128 (1977)). That said, the Court must assess the "reasonableness" of the stated policy considering (1) whether a "valid rational connection" exists between the challenged prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the prisoner has alternative means of exercising the right; (3) the impact that "accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "availability of ready alternatives." *Id.* at 90 (internal quotation marks and citations omitted).

Further, where, as here, a detainee asserts an unconstitutional burden of the right to access, he must show "'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). Actual injury occurs when a prisoner demonstrates that he lost a "nonfrivolous" and "arguable" claim because the facility denied him access to the courts. *Id*. at 399. Naked references to unfavorable case outcomes will not suffice. *See Wardell*

4

*v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access-to-court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). *See also Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

When viewing the Complaint facts most favorably to Miller, the Court cannot simply grant dismissal based on Defendants' assertion of a "no access to devices" policy. The Complaint makes plausible that Defendants' complete denial of any access to electronic devices thwarted Miller's ability to review critical discovery, to include volumes of photographs, video, and body worn camera footage. This, combined with cutting off Miller's alternative means of review at the Courthouse, hamstrung his ability to prepare an adequate defense, resulting in criminal convictions. In this respect, although the Court accords a healthy deference to Defendants' assertion that the "no access" policy satisfies "legitimate penological purposes," that deference does not command dismissal, at least not at this early stage. *See* ECF No. 10-1 at 3-4 (articulating necessity of banning access to the outside world). Accordingly, while restrictions on electronic devices appear rationally related to prisoner safety, Defendants do not address the remaining *Turner* considerations such as whether Defendants provide any alternative means of accessing electronic discovery, and if not, why not. Halfhearted acquiescence to the Circuit Court's directive to transport Miller *off site* so others may provide him a laptop does not alone demonstrate that the Defendants provided ready alternatives. Thus, the Court cannot conclude as a matter of law that Defendants "no access" policy commands dismissal.

That said, before this case proceeds, the Court will direct Miller to amend his Complaint. Miller's opposition includes far more detail about his claim than what is averred in the Complaint. *See* ECF No. 12. These additional facts include Defendants' refusal to assist Miller in accessing

discovery that had been placed on thumb drives for review, and Sheriff Gahler's personal interference in Miller's review of discovery at the courthouse. *Id.* at 5-6, 12 ("Sheriff Gahler specifically stopped me from Judge Bowen's Legal/lawful order of retrieving, researching, preparing my defense or se on March 28, 2025 by telling me "I better be finished by today at 3pm because he wasn't allowing me to return to the judge's chambers because he didn't give a fuck about Judge Bowen's order."); and how Defendants' restrictions adversely impacted Miller's civil and criminal cases, especially considering that for certain cases, Miller had no alternative access to discovery. *See id.* at 10-11. Finally, should Miller wish to pursue a retaliation claim against Captain Chester, as he suggests in his opposition, *id.* at 7-8, Miller must add the claim and supporting facts to the amended complaint.

## IV.    Motion for Appointment of Counsel

Miller asks the Court to appoint counsel because this case is complex and he suffers from cognitive limitations from a stroke. ECF No. 12 at 1; ECF No. 13. This Court's power to appoint counsel is discretionary and appropriately exercised upon a showing of exceptional circumstances. *See* 28 U.S.C. § 1915(e)(1). *See also Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel); *see also Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024) (". . . a district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel" including "whether the plaintiff has a colorable claim" and

6

"considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." (internal quotations omitted)).

Because Miller presents a colorable claim, the Court considers whether "the claim's objective complexity and the plaintiff's subjective abilities," renders Miller unable to present his case. *Jenkins*, 109 F.4th at 247. As of now, the matter is important and fact-intensive, but not unduly complex. Miller raises legitimate concerns about his ability to manage discovery and trial, especially given his limitations following a stroke. ECF No. 12 at 1; ECF No. 13 at 2. But it remains to be seen whether this case will proceed to discovery or trial. Miller also currently demonstrates the wherewithal to draft an amended complaint articulating the legal and factual basis for his claims. Accordingly, the Court denies the motion for now. The Court will revisit the motion should the case proceed to discovery.

## V.     Conclusion

For the above stated reasons, Defendants' Motion to Dismiss (ECF No. 10) is denied. Plaintiff will be granted 28 days to file an amended complaint as directed. Miller's motion for court-appointed counsel (ECF No. 13) is denied without prejudice.

A separate Order follows.

| | |
|---|---|
| 7/10/26 | /s/ |
| Date | Paula Xinis |
| | United States District Judge |